IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SCOTT MULROONEY,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Civil Action No. 12-163-SLR-CJB
                                        )
CORPORATION SERVICE COMPANY,            )
                                        )
            Defendant.                  )

## REPORT AND RECOMMENDATION

Plaintiff Scott Mulrooney ("Plaintiff") filed this action against Defendant Corporation

Service Company ("Defendant" or "CSC") alleging a violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and a violation of the implied covenant of

good faith and fair dealing under the law of the State of Delaware. (D.I. 1) Presently pending

before the Court is Defendant's Motion for Summary Judgment ("Motion"). (D.I. 4) For the

reasons that follow, I recommend that Defendant's Motion be DENIED.

## I.    BACKGROUND[1]

Plaintiff is a resident of the State of Delaware and former employee of Defendant. (D.I. 1

at ¶ 1) Defendant is a Delaware corporation with its corporate headquarters in Wilmington,

---

[1]      Because Defendant assumes the factual allegations included in Plaintiff's
Complaint to be true for purposes of this Motion only, (D.I. 5 at 1 n.2), the Court will consider
the allegations to be undisputed and to be properly supported facts for purposes of deciding the
Motion. *See United States v. Sierra Pac. Indus.*, 879 F. Supp. 2d 1128, 1132-33 (E.D. Cal. 2012)
(relying on facts alleged in defendant's pleading because plaintiff assumed them to be true for
purposes of the motion for summary judgment); *Ruffino v. McDaniel*, No. 3:09-cv-1915 (VLB),
2011 WL 2470699, at *5-6 (D. Conn. June 20, 2011) (relying on plaintiff's factual allegations in
the complaint on a motion for summary judgment where defendant assumed, for purposes of the
motion, that the facts were true).

Delaware.  (*Id.* at ¶ 2)

Plaintiff began working for Defendant on December 14, 2006 in CSC's Information Technology department.  (*Id.* at ¶ 11; D.I. 5 at 1)  In September of 2008, Plaintiff alleges that his supervisors arranged for a coworker to perform a "covert" assessment of his skills. (D.I. 1 at ¶¶ 18, 52)  Plaintiff was not informed of this assessment or its results, which indicated that Plaintiff lacked necessary technical skills to perform his job.  (*Id.*)  As a result, Plaintiff was transferred to a different department and given a "Success Plan" by his supervisor.  (*Id.* at ¶¶ 19-20, 53-54)  Plaintiff was falsely told that this was not a corrective action plan, when in fact it is alleged that this was a plan implemented for disciplinary purposes and meant to facilitate Plaintiff's later termination.  (*Id.* at ¶¶ 19-20, 53-55)

Subsequent to his transfer and the implementation of the Success Plan, Plaintiff received a gift card and was praised in an e-mail by a CSC executive for his on-job performance.  (*Id.* at ¶¶ 24-25)  Shortly thereafter, Plaintiff took a pre-approved two week vacation (from December 23, 2008 through January 6, 2009); while on this vacation, he suffered a re-aggravation of a pre-existing back injury.  (*Id.* at ¶ 26)  Upon return to work, Plaintiff requested accommodations for this back injury, including being provided an ergonomic chair and a temporary work schedule adjustment.  (*Id.*)  On January 13, 2009, one day after he had returned to work on a half-day basis, Plaintiff was fired.  (*Id.* at ¶ 31)  He was told he was fired because he "was no longer a model employee," but CSC did not cite any specific performance issue at the time of firing.  (*Id.*)

Following his termination, on February 10, 2009, Plaintiff filed a charge of discrimination with the Delaware Department of Labor ("DDOL").  (*Id.* at ¶ 7)  On November 23, 2010, the DDOL issued its Final Determination and Right To Sue Notice.  (D.I. 5, ex. A)  This notice

2

informed Plaintiff of his right to request that the Equal Employment Opportunity Commission ("EEOC") perform a Substantial Weight Review. (*Id.*) On November 30, 2010, Plaintiff sent a letter to the EEOC requesting that they perform a Substantial Weight Review of the DDOL's findings. (D.I. 10, ex. 5) On July 22, 2011, Plaintiff, through his attorney, sent a letter to the EEOC requesting the issuance of a Right to Sue Notice ("Notice"). (D.I. 1 at ¶ 8; D.I. 10, ex. 2 (hereinafter, "Fasic Affidavit"), ex. A; D.I. 12, ex. 2 (hereinafter, "Porter Affidavit") at ¶ 4) A copy of this Notice is in the record. On the Notice, next to the signature of the EEOC's District Director, is a line titled "Date Mailed"; above that line, it is written that the Notice was mailed on August 1, 2011. (D.I. 5, ex. B) The Notice is addressed to Plaintiff at his then-Bear, Delaware address; a "cc:" line at the bottom of the notice indicates that it was also to be mailed to Plaintiff's counsel, G. Kevin Fasic, Esquire, as well as an attorney for Defendant, Sarah E. DiLuzio, Esquire. (*Id.*) Karin Porter, the EEOC investigator assigned to Plaintiff's case, has provided a declaration in which she states that she did in fact send this Notice to Plaintiff and Mr. Fasic on August 1, 2011. (Porter Affidavit at ¶¶ 3, 5-6)

On August 16, 2011, Rose Green, a paralegal in Mr. Fasic's office, called Ms. Porter to inquire regarding the status of the Notice. (Porter Affidavit at ¶¶ 3, 6; D.I. 10, ex. 3 (hereinafter, "Green Affidavit") at ¶ 3) Ms. Green alleges that Ms. Porter informed her that Plaintiff's request for a Notice was sent to the Department of Justice ("DOJ") in Washington, D.C., and that Ms. Porter refused to provide a phone number for the DOJ office handling this request because "[Ms. Green] call[ed] too much." (Green Affidavit at ¶ 3) For her part, Ms. Porter alleges that on this call, she informed Ms. Green that the Notice had been sent to the parties; Ms. Porter denies that she informed Ms. Green that the request had been sent to the DOJ and that it was out of the

EEOC's hands, stating that the "EEOC would never send such requests to the USDOJ in cases involving private employers." (Porter Affidavit at ¶¶ 6-7)

At some point on or before September 8, 2011, Defendant's attorneys received the Notice. (D.I. 12, ex. 1) On September 8, 2011, Ms. DiLuzio forwarded the Notice to Defendant. (*Id.*) However, Plaintiff and his attorney, Mr. Fasic, aver that they never received a copy of the Notice directly from the EEOC. (D.I. 10, ex. 1 (hereinafter, "Plaintiff's Affidavit") at ¶ 5; Fasic Affidavit at ¶ 8) On February 6, 2012, Mr. Fasic sent a letter to Defendant's attorneys, indicating that, notwithstanding Plaintiff's non-receipt of the Notice, Plaintiff intended to file a complaint in this Court. (D.I. 5, ex. C) In response, on February 9, 2012, Defendant's attorneys sent Mr. Fasic a letter enclosing the Notice and further indicating Defendant's belief that a filing would be untimely. (D.I. 5, ex. D; D.I. 10, ex. 4)

Mr. Fasic avers that he did not review the letter and the attached Notice until February 10, 2012. (Fasic Affidavit at ¶ 6) Mr. Fasic further avers that, when he did so, this was the first time that he learned that a Notice had purportedly issued on August 1, 2011. (*Id.*)

On February 10, 2012, Plaintiff filed his Complaint in this Court alleging a violation of the ADA (Count I) and a violation of the implied covenant of good faith and fair dealing under Delaware law (Count II). (D.I. 1) On March 6, 2012, instead of filing an Answer, Defendant filed the instant Motion, seeking dismissal of all counts contained in Plaintiff's Complaint because they are allegedly untimely. (D.I. 4; D.I. 5 at 2-3) This matter was referred to the Court by Judge Sue L. Robinson on April 3, 2012, to "conduct all proceedings, including alternate dispute resolution [and] hear and determine all motions, through and including the pretrial conference." (D.I. 11) The Motion was fully briefed as of April 9, 2012. (D.I. 5, 10, 12)

## II.     STANDARD OF REVIEW

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986).  If the moving party has demonstrated the absence of a genuine dispute of material fact, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.* at 587 (internal quotation marks omitted).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  During this process, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks and citation omitted).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v.*

5

*Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Facts that could alter

the outcome are "material," and a factual dispute is genuine only where "the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Id.* at 247–48. "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id*. at 249–50 (internal citations omitted). A party asserting that a fact cannot be—or,

alternatively, is—genuinely disputed must support the assertion either by citing to "particular

parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for the purposes of the

motion only), admissions, interrogatory answers, or other materials"; or by "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) &

(B).

## III.   DISCUSSION

Defendant moves to dismiss both of Plaintiff's claims, on the grounds that they were not

timely filed. (D.I. 5 at 2-3) The Court will review Plaintiff's arguments as to each claim in turn.

### A.   Timeliness of the ADA Claim

"Before bringing a discrimination claim in federal court pursuant to the ADA, the

aggrieved party must file a charge of discrimination with the EEOC." *Arots v. Salesianum Sch.,*

*Inc.*, No. 01-334 GMS, 2003 WL 21398017, at *2 (D. Del. June 17, 2003). If the EEOC

dismisses the charge, the aggrieved party must sue the employer directly within ninety days of the

receipt of the EEOC notification of dismissal or risk forfeiting the claim. *Id.* (citing 42 U.S.C. §

2000e-5(f)(1)).

If the employer in an ADA case asserts an affirmative defense, like the expiration of a statute of limitations (as Defendant does here), then "the burden of proof for that defense rests solely on the employer." *See Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003); *see also Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007). Here, Defendant argues that Plaintiff filed suit more than ninety days after receiving the Notice from the EEOC. (D.I. 5 at 2) Proof of the expiration of this ninety-day period "clearly requires proof of the lawful start date for the limitations period." *Ebbert*, 319 F.3d at 108. This period is, in turn, triggered by the occurrence of two events: "dismissal by the EEOC followed by notice to the person aggrieved." *Id.*

Typically, the EEOC provides this notice by mailing a right to sue letter to the aggrieved party. *Arots*, 2003 WL 21398017, at *2; *see also Ebbert*, 319 F.3d at 115-116 & n.14. Occasionally, as here, disputes arise as to when such a notice was mailed and was ultimately received. In general, it is presumed that "a government agency has mailed a notice on the date shown on the notice." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 371 (S.D.N.Y. 2006) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)); *see also Payan*, 495 F.3d at 1123 (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 & n.1 (1984)). Moreover, the Third Circuit has employed the presumption drawn from the former Federal Rule of Civil Procedure 6(e) (now Rule 6(d)), that absent evidence to the contrary, a party is presumed to receive a document three days after it is mailed. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) (importing this presumption in a case involving the notice requirement of 42 U.S.C. § 2000e-5(f)(1)); *Arots*, 2003 WL 21398017, at *2 (same); *Garrison v. Town of Bethany Beach*, 131 F. Supp. 2d 585, 588 (D. Del. 2001) (same). However, a party may

rebut this presumption of receipt by putting forward sufficient evidence to the contrary. *Lafate v. Hosp. Billing & Collections Serv., Ltd.*, No. Civ. A. 03-985 JJF, 2004 WL 1960218, at *1-2 (D. Del. Sept. 1, 2004); *Arots*, 2003 WL 21398017, at *2.

In this case, it is undisputed that Plaintiff filed the Complaint on February 10, 2012. (D.I. 1) Thus, absent equitable tolling, Plaintiff must have first received notice of his right to sue no earlier than November 12, 2011, in order for this filing to be timely. Whether Plaintiff's Complaint was timely depends on the state of the evidence as to when Plaintiff received the Notice at issue.

Defendant has presented proof that the EEOC mailed the Notice on August 1, 2011. (D.I. 5, ex. B) That Notice itself lists the "Date Mailed" as August 1, 2011. (*Id.*) The Notice is further addressed "To" Plaintiff at what was then his correct address, and also indicates (in its "cc:" line) that it was to be mailed to Plaintiff's counsel, Mr. Fasic. (*Id.*; D.I. 5 at 4) Ms. Porter, the EEOC investigator assigned to Plaintiff's case, has also stated that on August 1, 2011, she sent the Notice to Plaintiff and Mr. Fasic. (Porter Affidavit at ¶ 5) These facts support the presumption that the EEOC mailed the Notice to Plaintiff and Mr. Fasic on August 1, 2011. Relatedly, the law would establish a presumption that Plaintiff received the Notice three days after the date it was mailed, or August 4, 2011.[2] Because this date is prior to the critical date of November 12, 2011, by putting forward the evidence referenced above and in reliance upon the

---

[2]     As noted above, there is also evidence in the record that Defendant's attorney, Ms. DiLuzio, received the Notice by at least September 8, 2011 (as like Mr. Fasic, Ms. DiLuzio was listed on the "cc:" line of the Notice as an attorney who should receive notice by mail). This evidence consists of an e-mail from Ms. DiLuzio to her client at CSC, sent on September 8, 2011, which attaches the Notice. (D.I. 12, ex. 1) It is not clear from the record whether Ms. DiLuzio received the Notice before September 8, 2011, nor why, if she did not, it took as much as a month or more for a notice purportedly sent by mail on August 1, 2011 to reach her.

8

afore-mentioned presumptions, Defendant has met its initial burden to show that there is no genuine issue of material fact regarding the timeliness of Plaintiff's filing of the Complaint as to the ADA claim.

Plaintiff attempts to rebut the presumption of receipt on August 4, 2011, by presenting evidence that, he contends, creates a genuine issue of material fact regarding whether filing was timely. The parties' briefs raise two areas of dispute that impact the resolution of this issue.

> **1.    Must Plaintiff Rebut the Presumption of Receipt By Presenting Clear and Convincing Evidence or By Meeting a Similarly Heightened Standard of Proof?**

First, the parties appear to disagree on what amount of proof Plaintiff must put forward in order to rebut the presumption. For its part, Plaintiff simply states that the presumption may be rebutted "[i]f a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [the plaintiff] by mail." (D.I. 10 at 9 (quoting *Sherlock*, 84 F.3d at 526)) Whereas Defendant, for the first time in its reply brief, argues that "Plaintiff must rebut [the presumption of receipt] with 'clear and convincing evidence.'" (D.I. 12 at 3 (citing cases))

The Court has found no case law in this Circuit suggesting that, under the circumstances present here, Plaintiff is required to rebut the presumption of receipt by "clear and convincing evidence" or by a similarly heightened standard of proof. The closest analog the Court has found to any type of heightened burden in a similar context is the decision of the United States Court of Appeals for the Third Circuit in *Santana Gonzalez v. Attorney General of U.S.*, 506 F.3d 274 (3d Cir. 2007), a case involving immigration removal proceedings. In *Santana Gonzalez*, the Third

Circuit addressed the standard an alien must meet in order to rebut the presumption that she did not receive any notice of a removal proceeding. *Id.* at 277. In that context, the Court drew a distinction between the strength of a presumption of receipt applicable to notice letters sent by certified mail, as compared to those sent by regular mail. *Id.* at 277. The *Santana Gonzalez* Court held that in the case of certified mail, which "carries with it extra assurances of effective delivery that are absent when letters are sent via ordinary means," there is a "strong presumption" of service that "may be overcome by [a showing] of nondelivery or improper delivery by the Postal Service . . . [only if supported by] *substantial and probative evidence* such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery." *Id.* at 278 (emphasis added) (internal quotation marks and citations omitted). The Third Circuit found, however, that in the case of notice sent by regular mail, a "weaker presumption of receipt" applies. *Id.* at 279. This weaker presumption may be overcome by "an affidavit by [the party] claiming non-receipt . . . or [one by] a responsible person residing at [the party's] address, along with circumstantial evidence corroborating the [party's] claims of non-receipt." *Id.* at 280 (citing *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002)). The *Santana Gonzalez* Court also noted that even in the absence of a sworn affidavit, the weaker presumption could be overcome by demonstrating that the petitioner had no motive to avoid the hearing at issue, and where other circumstantial evidence (such as evidence that petitioner had taken steps to inquire about her removal status) indicated that the recipient had not received the notice letter. *Id.* at 280 (quoting *Sembiring v. Gonzales*, 499 F.3d 981, 988 (9th Cir. 2007)).

Although many of the cases applying the rationale of *Santana Gonzalez* arise in the

10

removal context, *see, e.g.*, *Ramos-Olivieri v. Attorney General of U.S.*, 624 F.3d 622 (3d Cir. 2010), at least one case has applied this rationale outside of those specific circumstances. In *Gentis, Inc. v. Oates*, No. 09-cv-5490, 2011 WL 93851 (E.D. Pa. Jan. 11, 2011), the plaintiffs, an employer and employee, applied for a permanent work visa from the U.S. Department of Labor ("DOL"). *Id.* at *1. As part of the procedure, the DOL issued an Audit Notification Letter ("Audit Letter") to plaintiff's attorney, requesting that additional documentation supporting plaintiffs' application be submitted within 30 days of the issuance of the letter. *Id.* According to agency protocol, failure to timely respond to such a letter would result in the application being denied without the ability to further appeal. *Id.* The DOL never received a response to its letter and, accordingly, issued a decision denying the application. *Id.* Plaintiffs then submitted a request for reconsideration with the DOL, denying that they or their attorney had ever received the letter. *Id.* Subsequently, plaintiffs filed an action in federal court, seeking an order vacating the DOL's denial of the application. *Id.* at *2.

The *Gentis* Court, in reviewing cross-motions for summary judgment, addressed plaintiffs' claim that they had never received the Audit Letter. In doing so, it noted that the letter appeared to have been sent by regular mail, not certified mail, and cited *Santana Gonzalez* for the proposition that a "'weaker presumption[] of effective service applies to service by regular mail' than to service by certified mail." *Id.* at *4 (quoting *Santana Gonzalez*, 506 F.3d at 278). The *Gentis* Court ultimately found that the presumption of receipt had been rebutted. This was so in part because the plaintiff employer who filed the application had "little [if] nothing . . . to gain by not responding to the Audit Letter." *Id.* at *5. Moreover, once notified of its failure to respond, the employer took the step of promptly requesting that the decision be reconsidered and

11

simultaneously submitted the requested information, which in the *Gentis* Court's view "dispell[ed] any inference that [plaintiffs] deliberately failed to respond to the audit to avoid having to produce such documentation." *Id.* Finally, the *Gentis* Court noted that plaintiffs never changed their addresses, "rendering it more likely that a letter that was actually sent to them would reach at least one of them." *Id.*

Even if the holdings of *Santana Gonzalez* and *Gentis* could be applied to an employment case—such that in the case of a notice letter sent by certified mail, a plaintiff was required to put forward a heightened amount of proof in order to rebut a presumption of receipt of the letter—in this case, there is no indication that the Notice was mailed in that manner. The face of the Notice does not indicate this, (*see* D.I. 5, ex. B), nor has Defendant (who has the burden of proof to establish the affirmative defense at issue here) provided any other evidence to suggest that certified mail was used. Additionally, Ms. Porter, the EEOC employee who avers to having sent the letters, did not indicate in her affidavit that they were sent via certified mail. (Porter Affidavit at ¶ 5)

As a result, the Court cannot conclude that Plaintiff must put forward "clear and convincing evidence" (or meet a similarly heightened standard of proof) in order to rebut the applicable presumption of receipt.[3]

---

[3]     Further supporting this conclusion is the fact that the Court has found no case law from this Circuit or this Court requiring that a plaintiff provide "clear and convincing" evidence in order to rebut the presumption of receipt. The two cases cited by Defendant for the proposition that Plaintiff must rebut the presumption of receipt by clear and convincing evidence involved bankruptcy litigation that took place in courts outside the Third Circuit. (D.I. 12 at 3 (citing *Johnson v. Bethel Pub. Sch.*, No. C11-5233BHS, 2012 WL 1032772, at *4 (W.D. Wash. Mar. 27, 2012); *Garcia v. Direct Fin. Servs., LLC*, Civil Action No. 7:10CV00359, 2010 WL 4065498, at *4 (W.D. Va. Oct. 15, 2010)))

2.     **Has Plaintiff Otherwise Put Forward Sufficient Evidence to Rebut the Presumption?**

Next, the parties disagree as to whether Plaintiff has put forward sufficient evidence to rebut the presumption of receipt. In an attempt to do so, Plaintiff presents his own sworn affidavit and affidavits from Mr. Fasic and Ms. Green. Whether measured against the type of evidence found to rebut the weaker presumption applicable to notice sent by regular mail in *Santana Gonzalez* and *Gentis*, or whether measured against the evidence courts in this Circuit have found to rebut the presumption of receipt in ADA and Title VII cases, the Court finds that Plaintiff has met his burden to rebut the presumption. Additionally, the evidence is sufficient to create a genuine issue of material fact as to whether Plaintiff or his attorney received the Notice prior to November 12, 2011. *See Carter v. Potter*, 258 F. App'x 475, 478 (3d Cir. 2007) (noting in Title VII case that statute of limitations begins to run when either plaintiff or his attorney receives such notice, whichever is earlier).

First, these affidavits clearly state that neither Plaintiff nor Plaintiff's Attorney received the Notice prior to February 9, 2012—the date when Mr. Fasic was forwarded the Notice by Defendant's counsel. In his affidavit, Plaintiff indicates that he was "aware that [his attorney] had requested a Right to Sue Notice from the EEOC" in July 2011, that he was aware of the "importance of this document", that he was in "constant contact" with Mr. Fasic during this time and that he was advised to notify Mr. Fasic "immediately" if the EEOC sent a copy of the Notice to him. (Plaintiff's Affidavit at ¶¶ 2-3) Plaintiff further avers that "[a]t no time during the months of August or September, 2011, did [he] receive anything from the EEOC" and that, being aware of the importance of that Notice, if he had received it, he would have sent it to Mr. Fasic

13

immediately. (*Id.* at ¶ 5) Plaintiff also indicates that his Bear, Delaware address listed on the

EEOC Notice was his correct address up through September 30, 2011, when he moved to a new

address in Wilmington, Delaware. (*Id.* at ¶ 4) However, Plaintiff avers that before this move, he

requested that the U.S. Postal Service forward all mail to his new address, that this request was

processed, and that afterwards, he in fact received mail at the new address that had been sent to

his old address.[4] (*Id.* at ¶ 4) Since that time he avers to have "received no communications or

mail from the EEOC." (*Id.* at ¶ 5)

Plaintiffs sworn statements regarding non-receipt are corroborated by the affidavits of Mr.

Fasic and Ms. Green. Both Mr. Fasic and Ms. Green aver that Mr. Fasic's office did not receive

a copy of the Notice until it was forwarded to him by Defendant's counsel, that they were aware

of the importance of the Notice, and that they routinely search the office mail (such that had the

Notice arrived, they would likely have seen it). (Fasic Affidavit at ¶¶ 2-10; Green Affidavit at ¶¶

2-4) The contents of Ms. Green's affidavit do raise an area of disputed material fact, as Ms.

Green claims that in an August 16, 2011 call with Ms. Porter, Ms. Porter told her that no Notice

had been sent, that the request had been forwarded to the DOJ in Washington, D.C and said that

Ms. Green "call[s] too much." (Green Affidavit at ¶ 3) Ms. Porter denies this, claiming that she

told Ms. Green on the call that the Notice *had* been mailed, and asserting that in light of EEOC

policy, she would never have said otherwise and would never have forwarded Plaintiff's request

---

[4]      In support of this averment, Plaintiff supplies an e-mail confirmation from the
U.S. Postal Service, dated September 26, 2011, confirming that his change of address request has
been processed. (Plaintiff's Affidavit, ex. A) He also provides copies of a bank statement, an
insurance document, and a tax document that were addressed to his old address but were
successfully forwarded to his new address after the change of address was processed. (Plaintiff's
Affidavit, ex. B)

14

for a notice letter to the DOJ. (Porter Affidavit at ¶¶ 6-7) Yet at this stage, the Court cannot make credibility determinations, and must draw all reasonable inferences in favor of the non-moving party, meaning that it must take into account the fact that a jury could credit Ms. Green's version of the call. Taken together then, Mr. Fasic's and Ms. Green's affidavits provide further evidence of non-receipt of the Notice prior to November 2011.

Defendant asserts that Mr. Fasic and Ms. Green's assertion of non-receipt "do not serve as evidence as to whether Plaintiff received his right-to-sue notice." (D.I. 12 at 3 (emphasis omitted)) The Court finds that these statements serve not only as evidence of non-receipt by Plaintiff's counsel, but that they also serve as circumstantial evidence of Plaintiff's non-receipt. That is, it is at least somewhat more plausible to believe that Plaintiff did not receive the Notice by mail if the EEOC claims that it sent the Notice to Plaintiff's counsel at the same time, and his counsel asserts that he did not receive it either. Such evidence might plausibly suggest some type of broader problem with the EEOC's mailing practices as to this Notice, which might make it more reasonable to believe that not only did Plaintiff's counsel not receive the Notice, but that Plaintiff did not receive it as well.[5]

---

[5] Ms. Porter's affidavit states that on August 1, 2011, she sent the Notice to Mr. Fasic at an address on North King Street in Wilmington, Delaware. (Porter Affidavit at ¶ 5) In a footnote in its reply brief, Defendant states that this is a prior office address for Mr. Fasic, and suggests that the reason why Mr. Fasic may not have received the Notice from the EEOC is because the EEOC sent the letter to the wrong address. (D.I. 12 at 6 n.5) There is little in the record about the issue of when Mr. Fasic's office address changed, or how this may have impacted the alleged failure of receipt of the Notice. There is, however, a copy of a July 22, 2011 letter from Ms. Green to the EEOC's Ms. Porter, written on stationary from Mr. Fasic's office, which notes that the office was at that time located on West Street in Wilmington, Delaware. (Fasic Affidavit, ex. A) Although the record is far from clear as to this issue, at a minimum, if the EEOC had notice of Mr. Fasic's new office address, yet mistakenly sent the Notice to an old address due to no fault of Mr. Fasic, this would render it more likely, not less likely, that Mr. Fasic had not received the Notice prior to November 12, 2011. *See Nowell v.*

Second, other circumstances surrounding these incidents can be said to further corroborate the claims of non-receipt. At the outset, it is undisputed that Plaintiff, through his attorney, contacted the EEOC in July 2011 to request the issuance of the Notice. (Fasic Affidavit at ¶ 2; Green Affidavit at ¶ 2; Porter Affidavit at ¶ 4) Moreover, it is also undisputed that Ms. Green, on behalf of Plaintiff's counsel, called the EEOC twice to check on the status of the Notice, and spoke with Ms. Porter on one of those calls on August 16, 2011. (Green Affidavit at ¶ 3; Porter Affidavit at ¶ 6) This demonstrated interest in obtaining the Notice, combined with Plaintiff's statements indicating his awareness of the importance of receiving the Notice, make it at least somewhat less likely that had the Notice arrived at Plaintiff's address or Mr. Fasic's address prior to November 2011, that Plaintiff or his counsel would simply have ignored it. They also underscore that Plaintiff would seem to have had little motive to do so—in light of the fact that such an act would (as has been the case here) have potentially subjected him to a later argument that his ADA claim is barred by the statute of limitations. *See, e.g.*, *Santana Gonzalez*, 506 F.3d at 280-81; *Gentis*, 2011 WL 93851, at *5.

Mr. Fasic's February 6, 2012 letter to Defendant's counsel (which attached a copy of the draft Complaint) and the circumstances surrounding the filing of that Complaint, are also not inconsistent with the claims of non-receipt. (Fasic Affidavit at ¶¶ 4-6; D.I. 5, ex. C) Although normally a plaintiff should wait until the issuance of a right to sue letter before initiating suit, this is not a requirement, so long as sufficient time has elapsed from the request for the letter and the

*Harrison, Walker, & Harper, L.L.P.*, 80 F. Supp. 2d 622, 624-25 (E.D. Tex. 1999) (refusing to find that the plaintiff received his copy of the right to sue notice around the same time that the defendant received his copy from the EEOC, where the EEOC sent the right to sue notice to plaintiff's old address, even though plaintiff had requested that it be sent to his designated counsel).

16

plaintiff otherwise meets all legal requirements. *See N'Jai v. Floyd*, Civil Case No. 07-1506, 2009 WL 4823839, at *11 (W.D. Pa. Dec. 9, 2009); *Albright v. City of Philadelphia*, 399 F. Supp. 2d 575, 584 (E.D. Pa. 2005). Here, Mr. Fasic's February 6, 2012 letter states that the EEOC has not issued a Notice despite Plaintiff's request—corroborating his assertion that his office had not yet received the Notice as of that date. (D.I. 5, ex. C) When Defendant's counsel responded on February 9, 2012, informing Mr. Fasic that the EEOC had issued a Notice dated August 1, 2011, Plaintiff promptly filed suit the next day. (D.I. 5, ex. D; D.I. 1); *see Gentis*, 2011 WL 93851, at *5 (finding presumption of receipt rebutted where, *inter alia*, after learning that his claims had been denied despite allegedly not having previously received an Audit Letter, plaintiff "promptly" moved for reconsideration and submitted the items that were requested in the Audit Letter).

In light of the affidavits and circumstantial evidence discussed above, the Court finds that Plaintiff has rebutted the applicable presumption of receipt and has raised a triable issue of fact as to whether the Notice was received on or after November 12, 2011. Plaintiff's evidence would be sufficient to do so if measured against the evidence found to rebut the weaker presumption of receipt applicable to notice sent by regular mail in *Santana Gonzalez* and *Gentis*. It would also be sufficient if measured against the type of evidence that has served to rebut the presumption of receipt in ADA or Title VII cases in this Circuit. *Compare Pagonakis v. Express, LLC*, 534 F. Supp. 2d 453, 459-60 (D. Del. 2008), *rev'd on other grounds*, 315 F. App'x 425 (3d. Cir. 2009) (denying motion for partial summary judgment in ADA case and finding that plaintiff had sufficiently rebutted the three-day presumption of receipt by putting forth her own sworn statement and documentary and circumstantial evidence that supported her alternate date of

17

claimed receipt), *and Counts v. Shinseki*, Civil Action No. 08-85 Erie, 2010 WL 3810662, at *5-7 (W.D. Pa. Sept. 23, 2010) (denying motion for summary judgment in Title VII case, on grounds that plaintiff had rebutted three-day receipt presumption, where plaintiff put forward her own statement and sworn affidavits of her husband and counsel in support of her alternative proffered date of receipt), *with Arots*, 2003 WL 21398017, at *2 (granting motion to dismiss or for summary judgment in ADA case where plaintiff offered no evidence, other than his own "bare assertion", in attempting to rebut the three-day presumption of receipt). The Court therefore recommends that the Motion be denied as to the ADA claim.

**B.      Timeliness of Filing as to Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

Defendant also moves for summary judgment regarding Plaintiff's state law claim for breach of the implied covenant of good faith and fair dealing, on the ground that the claim was untimely filed. (D.I. 5 at 5-6) Plaintiff opposes this Motion, asserting that the applicable statute of limitations was tolled. (D.I. 10 at 13-15)

**1.      "Accrual" of the Cause of Action**

Under Delaware law, employment is generally covered by the employment-at-will doctrine. *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 437 (Del. 1996). The doctrine, which generally permits the dismissal of employees without cause and regardless of the motive, "'provides a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite.'" *Id.* at 440 (quoting *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 102 (Del. 1992)). Notwithstanding this doctrine, Delaware law recognizes that every employment agreement contains an implied covenant of

good faith and fair dealing, which provides for limited exceptions to the general rule permitting

dismissal of employees without cause and regardless of the motive. *Id.* at 440-41. These limited

exceptions include:

> (1) where termination violated public policy; (2) where the employer
> misrepresented an important fact and the employee relied on the
> misrepresentation either to accept a new position or remain in the current
> one; (3) where the employer used its superior bargaining power to deprive
> an employee of clearly identifiable compensation related to the
> employe[e]'s past service; and (4) where the employer falsified or
> manipulated employment records to create fictitious grounds for
> termination.

*Owens v. Connections Cmty. Support Programs, Inc.*, 840 F. Supp. 2d 791, 798 (D. Del. 2012)

(citing *Pressman*, 679 A.2d at 442-44).

The statute of limitations for claims based on breach of the implied covenant of good

faith and fair dealing is set forth in Del. Ann. tit. 10, § 8106 ("Section 8106"). *Homsey*

*Architects, Inc. v. Nine Ninety Nine, LLC*, Civil Action No. 4412-VCP, 2010 WL 2476298, at *8

(Del. Ch. June 14, 2010). Section 8106 reads, in pertinent part: "no action to recover damages

caused by an injury unaccompanied with force or resulting indirectly from the act of the

defendant shall be brought after the expiration of 3 years from the accruing of the cause of

action." The Supreme Court of the State of Delaware has "repeatedly held that a cause of action

'accrues' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of

the cause of action." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004);

*see also Smithkline Beecham Pharm. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 450 (Del. 2000)

("[Section 8106] is not a 'discovery statute,' [thus,] the limitations period begins to run from the

time the cause of action accrues. . . . This is so even if the plaintiff is ignorant of the cause of

19

action.") (internal quotation marks and citations omitted).

"For breach of contract claims, the wrongful act is the breach, and the cause of action accrues at the time of breach." *Certainteed Corp. v. Celotex Corp.*, No. Civ. A. 471, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005); *see also Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, Civil Action No. 5140-CS, 2012 WL 3201139, at *16 (Del. Ch. Aug. 7, 2012). Here, it cannot seriously be disputed that Plaintiff's cause of action accrued at the latest by January 13, 2009, the undisputed date on which Plaintiff's employment was terminated. This is because Plaintiff alleges that the breach of the implied covenant of good faith and fair dealing occurred when CSC "discharge[d him] as a result of ill will, with an intent to cause harm, and by means of deceit, fraud, or misrepresentation." (D.I. 1 at ¶ 48) As far as accrual of the cause of action is concerned, it does not matter that, at the time, Plaintiff did not know of the alleged deceit, fraud, or misrepresentation. *Cf. Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006). Accordingly, under Section 8106, Plaintiff had until January 13, 2012 to file suit. Because Plaintiff did not file suit until February 10, 2012, his claim is time-barred, unless he can demonstrate that the statute of limitations period should be tolled. *See id.*

## 2. Tolling of the Statute of Limitations

Delaware courts have carved out limited circumstances in which the running of the limitations period can be tolled. *Id.* One such circumstance—the only one Plaintiff cites as being applicable here—is the doctrine of "inherently unknowable injury," also known as the "time of discovery rule." *Id.*; *Morton v. Sky Nails*, 884 A.2d 480, 481 (Del. 2005); *Wal-Mart Stores*, 860 A.2d at 319; *see also* (D.I. 10 at 13-14). Pursuant to the time of discovery rule, the statue is tolled:

20

> [W]here the injury is inherently unknowable and the claimant is
> blamelessly ignorant of the wrongful act and the injury complained of. In
> such a case, the statute will begin to run only upon the discovery of facts
> constituting the basis of the cause of action *or* the existence of facts
> sufficient to put a person of ordinary intelligence and prudence on inquiry
> which, if pursued, would lead to the discovery of such facts.

*Wal-Mart Stores*, 860 A.2d at 319 (emphasis in original) (internal quotation marks and citation

omitted).

Specifically, Plaintiff argues that the doctrine applies here because he did not become

aware of certain alleged misrepresentations of his supervisors until well after the date when the

DDOL began investigating his claim on February 10, 2009. (D.I. 10 at 13-14) Defendant

responds by arguing that Plaintiff's "injury," for purposes of the time of discovery rule, was his

"actual injury" (his termination) and not his "legal injury" (when he learned of facts, such as the

alleged misrepresentations, that gave rise to the knowledge that his discharge constituted a legal

wrong). (D.I. 12 at 9) Because Plaintiff was undisputedly aware of his termination, Defendant

argues, Plaintiff's "injury" could not have been "inherently unknowable." (*Id.*)

### a.    Awareness of Legal Injury is Required under Delaware Law

As an initial matter, it does not appear as if Delaware courts have specifically addressed,

in an employment case like this, whether the time of discovery rule would toll the applicable

statute of limitations only until plaintiff was aware of the "actual injury" (his termination), as

opposed to the date upon which plaintiff became aware of facts suggesting that there was a

breach of the implied covenant of good faith and fair dealing. As a result, the Court's challenge

is to predict "how the state's highest court would decide were it confronted with the problem."

*McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661 (3d Cir. 1980); *see also Holmes v. Kimco*

21

*Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). Thus, the Court must "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna*, 622 F.2d at 663; *Essick v. Barksdale*, 882 F. Supp. 365, 369 (D. Del. 1995).

The Court will first turn to *Brown v. E.I. duPont de Nemours & Co., Inc.*, 820 A.2d 362 (Del. 2003), where the Delaware Supreme Court faced a similar issue, albeit in a different context. *Id.* at 364. In that case, a number of children were born with severe eye defects; at the time of their birth, the current state of medical scholarship provided no explanation for the defects. *Id.* at 364-65. It was not until a number of years later that an expert linked the children's eye defects to their mothers' prenatal exposure to a component of a fungicide produced by defendant E.I. DuPont de Nemours and Company ("DuPont"). *Id.* at 365. Within two years of this linkage, the plaintiffs brought suit against DuPont, who in turn moved for summary judgment on the grounds that the actions were time-barred under the applicable statute of limitations for personal injuries, Del. Code Ann. tit. 10, § 8119.[6] *Id.* The trial court found for DuPont, deciding that the time of discovery rule did not apply beyond the time the children were born, because the eye conditions were manifest at birth. *Id.* at 368.

On appeal, the Delaware Supreme Court overturned this result, finding that the time of discovery exception applied, and that this exception "starts the limitations period running only 'when a *legal injury* is sustained.'" *Id.* at 368 (emphasis added) (citation omitted). In so finding,

---

[6]     This statute reads: "[n]o action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged *injuries* were *sustained* . . ." Del. Code Ann. tit. 10, § 8119 (emphasis added).

the *Brown* Court stated that the purpose of the time of discovery rule is to prevent the statute of
limitations for physical injuries from "presenting the plaintiff with a Hobson's choice." *Id.* at
366. According to the *Brown* Court it would be a "Hobson's choice" "to suggest, on the one
hand, that one could not maintain a cause of action unless and until one could show not only a
breach of duty but an injury or damage . . . and, on the other hand, to suggest that the time for
bringing that action could begin and terminate before the individual could either reasonably be
aware of the injury or damage or be able in any manner to establish its existence." *Id.* at 366 n.11
(quoting *Condon v. A.H. Robins Co.*, 349 N.W.2d 622, 625 (Neb. 1984)). Instead, the *Brown*
Court explained that to apply "the discovery exception, the court must conduct a fact-intensive
inquiry to determine whether a plaintiff was blamelessly ignorant *of a potential claim* or dilatory
in pursuing the action." *Id.* at 368 (emphasis added). In the context of the case presented, the
*Brown* Court found that a "plaintiff may remain blamelessly ignorant of the potential claim even
after a latent injury reveals itself through physical ailments" so long as "the symptoms are
reasonably attributable to another cause and the plaintiff is not on notice of the [actual] cause."
*Id.* Thus, in cases like the one before it, the *Brown* Court held that the statute of limitations
period did not begin to run until "someone from the scientific community found and revealed
publicly a link between the physical condition and the exposure to the toxic substance." *Id.*

As noted above, *Brown* did not specifically deal with an employment case, or a claim for
breach of the implied covenant of good faith and fair dealing. However, an examination of the
"doctrinal trends of [Delaware law], and the policies which inform[ed] the prior adjudications by
the [Delaware] courts" shows that the rationale in *Brown* should be applied here. *See McKenna*,
622 F.2d at 666.

23

First, an examination of the history of the application of the time of discovery rule in

Delaware courts shows that the rationale underlying application of the rule in one case has

frequently been imported into other contexts. Take for instance the initial expansion of the rule.

In *Layton v. Allen*, 246 A.2d 794 (Del. 1968), the Delaware Supreme Court first adopted the time

of discovery rule in the context of physical injury claims governed by the statute of limitations

for physical injuries[7]—but it distinguished a line of prior cases that had held "that lack of

knowledge of the existence of a cause of action does not toll the running of the statute of

limitations," by noting that those cases involved "statutes of limitations of the 'accrual' type."

*Id.* at 799. However, only a few years later, the Delaware Supreme Court extended the rationale

in *Layton* to a case governed by Section 8106, an "accrual type" statute. *Isaacson, Stolper & Co.

v. Artisans' Sav. Bank*, 330 A.2d 130, 132-33 (Del. 1974) (applying the time of discovery rule to

accounting malpractice claims governed by Section 8106, where the taxpayer did not know he

suffered an injury until the Internal Revenue Service asserted a claim). Since that time, the

Delaware Supreme Court and other courts of the State have applied this rationale to many other

types of claims subject to Section 8106, including claims involving breach of contract, tortious

misrepresentation and negligence. *See, e.g.*, *Wal-Mart Stores*, 860 A.2d at 319-21 (finding tort,

contract, and fiduciary duty claims, all governed by Section 8106, tolled under the time of

---

[7]     The statute at issue in *Layton* was the predecessor to the statute at issue in *Brown* and is similar in all material respects. *Compare Layton*, 246 A.2d at 796 ("No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained.") (quoting Del. Code Ann. tit. 10, § 8118), *with Brown*, 820 A.2d at 365 n.3 ("No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained. . . .") (quoting Del. Code Ann. tit. 10, § 8119).

discovery rule); *Rudginski v. Pullella*, 378 A.2d 646, 649 (Del. Super. Ct. 1977) (applying time of discovery rule in context of allegedly negligent installation of a septic tank). Considering this trend, it seems likely that the Delaware Supreme Court would apply the rationale in *Brown* to the case at bar.

Second, the underlying rationale of *Brown* is applicable to the facts of this case. The *Brown* Court described the purpose of the time of discovery rule as preventing the operation of the statute of limitations from presenting the plaintiff with a Hobson's choice—to on the one hand, suggest that one could not maintain a cause of action unless and until one could show both a wrongful act and an injury flowing from that act and, on the other hand, to suggest that the time for bringing that action could begin and terminate before the individual could be able in any manner to establish the claim's existence. *See Brown*, 820 A.2d at 366 & n.11. However, that is what Defendant seeks to do here, by arguing that the time of discovery rule applies only up to the time when Plaintiff learned that he was terminated, even though Plaintiff claims he did not then (and could not have) had any indication that such termination was a by-product of bad faith, deceit, fraud, or misrepresentation.[8] Thus, the policy considerations discussed in *Brown* support the application of the time of discovery rule to the instant case in the manner suggested by Plaintiff. *See Pioneer Nat'l Title Ins. Co. v. Sabo*, 432 F. Supp. 76, 81 (D. Del. 1977) (applying the time of discovery rule in an attorney malpractice case involving Delaware law in part because application in that case was in line with the rationale of prior Delaware Supreme Court opinions).

---

[8]     Moreover, it does not make a difference that Plaintiff actually discovered the facts underlying Defendant's alleged bad faith, deceit and misrepresentation before the statute of limitations regarding Plaintiff's claim would have otherwise expired if not tolled. *See Morton*, 884 A.2d at 482 (rejecting defendant's argument that the time of discovery rule requires the plaintiff to discover the injury *after* the statute of limitations would have expired).

In support of its argument, Defendant points exclusively to one case, *Oshiver v. Levin,*

*Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994). (D.I. 12 at 9-10)  That case dealt with

whether a plaintiff's claims for discriminatory failure to hire and discriminatory discharge under

Title VII and the Pennsylvania Human Relations Act ("PHRA") were time-barred. *Oshiver*, 38

F.3d at 1383.  There, the plaintiff applied for a position as an associate at the defendant law firm;

she was instead hired as an hourly attorney, but only after defendant advised her that she would

be considered for an associate position if one became available. *Id.* at 1384.  Almost a year later,

the plaintiff was dismissed with the explanation that the firm did not have sufficient work to

support her position, but was told that the firm would contact her if another hourly or associate

position became available. *Id.*  A year later, during an unemployment compensation benefits

hearing, the plaintiff learned that shortly after her dismissal, a male attorney was hired to take

over her duties as an hourly employee.  Six months later, the plaintiff filed suit, alleging that her

dismissal was due to gender discrimination. *Id.*

In determining whether the plaintiff's claims were time-barred, the *Oshiver* Court

examined what is known as the "discovery rule," a rule that applies to federal claims.  This

federal "discovery rule" "functions to delay the initial running of the statutory limitations period,

but only until the plaintiff has discovered or, by exercising reasonable diligence, should have

discovered (1) that he or she has been injured, and (2) that this injury has been caused by another

party's conduct." *Id.* at 1386.  The *Oshiver* Court explained that the Third Circuit's prior case

law and precedent from other courts counseled that a plaintiff's "claim accrues in a federal action

upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong."

*Id.* at 1386-87 (citing cases).  The *Oshiver* Court thus determined that the plaintiff's

discriminatory discharge claims accrued for purposes of the "discovery rule" on "the very date [the] defendant law firm informed her of her discharge," notwithstanding the fact that the plaintiff "may have been deceived regarding the underlying [allegedly discriminatory] motive behind her discharge." *Id.* at 1391.

The Court finds Defendant's reliance on this case unpersuasive for a few reasons. For one thing, the law applied by the *Oshiver* Court relates to the application of the federal "discovery rule," which determines when a federal cause of action accrues—and does not apply to the Delaware "time of discovery" rule, a tolling exception applicable to Delaware statutes of limitations.

Additionally, the rationale and holding of *Oshiver* is inconsistent with that of *Brown*. While the *Oshiver* Court held that discovery of the actual injury and its cause is sufficient to trigger the running of the statutory period, 38 F.3d at 1386-87, the *Brown* Court held that the applicable statute of limitations should be tolled until the legal injury is discovered, 820 A.2d at 368-69. Moreover, the *Brown* Court's concern that the statute of limitations not run before the plaintiff is or could be aware of facts sufficient to support a claim is not present in *Oshiver's* discussion of the import of the federal "discovery rule."

Thus, to the extent that *Brown*, a Delaware Supreme Court decision in an analogous situation, provides a "useful indication[] of the [Delaware Supreme Court's] probable disposition" of the issue at hand, it should prevail over the decision of a federal court applying the law of another jurisdiction. *Cf. McKenna*, 622 F.2d at 662. For these reasons, the Court finds that the Delaware Supreme Court would apply the time of discovery rule in this context and toll the applicable statute of limitations until Plaintiff was or should have been aware of his legal

injury, as opposed to his actual injury (i.e., his termination).

### b.    The Court Will Recommend Dismissal of Defendant's Motion as to Count II Without Prejudice

The Court must now determine whether Plaintiff has demonstrated that there is a genuine issue of material fact that application of the time of discovery rule here would render the claim timely, so as to preclude summary judgment.

As previously noted above, under the time of discovery rule the statute is tolled and will begin to run only "upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Wal-Mart Stores*, 860 A.2d at 319 (emphasis in original) (internal quotations omitted). Thus, "there must have been no observable or objective factors to put a party on notice of an injury, and plaintiffs must show that they were blamelessly ignorant of the act or omission and the injury." *In re Dean Witter P'ship Litig.*, No. Civ. A. 14816, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998). To determine whether this exception applies, "the court must conduct a fact-intensive inquiry to determine whether a plaintiff was blamelessly ignorant of a potential claim or dilatory in pursuing the action." *Brown*, 820 A.2d at 368. In other words, under this doctrine, the limitations period is tolled "while the discovery of the existence of the cause of action is a practical impossibility." *In re Dean Witter*, 1998 WL 442456, at *5. For instance, discovery may be a practical impossibility when the information underlying the cause of action is "uniquely in the hands of" the defendant. *Cf. Krahmer*, 903 A.2d at 781.

To meet his burden of creating a genuine issue of material fact as to whether the

28

discovery rule tolls the statute of limitations until February 10, 2009 (three years before he filed his claim), Plaintiff points to portions of his complaint for support.[9] (D.I. 10 at 14-15)

As to whether the time of discovery rule could apply here because the information giving rise to the cause of action was "uniquely in the hands of" Defendant, the facts presented would allow for a reasonable inference that this was so. Specifically, Plaintiff alleges that his supervisors arranged for a coworker to perform a "covert" assessment of his skills. (D.I. 1 at ¶¶ 18, 52) At the time, Plaintiff was not informed of this assessment and the results were apparently communicated only to his supervisors. (*Id.*) As a result, Plaintiff was transferred to a different department and given a "Success Plan." (*Id.* at ¶¶ 19-20, 53-54) Although the true purpose of the plan was allegedly different (it is alleged to have been a disciplinary measure, secretly meant to lead to Plaintiff's eventual termination), Plaintiff was told that this plan was not a corrective action plan. (*Id.*) Because these facts support an inference that the information regarding the assessment and the true purpose of the Success Plan (facts underlying Plaintiff's claim) were kept from Plaintiff and were solely in the hands of his employer, Plaintiff has raised a triable issue of fact as to whether the time of discovery rule would initially apply to toll the applicable statute of limitations. *Cf. Krahmer*, 903 A.2d at 781-82 (finding that the time of discovery rule did not apply because the plaintiff did not allege that the information regarding a painting's authenticity was uniquely in the hands of the defendant).

Moreover, it is also reasonable to infer that Plaintiff's termination itself could not have put him on notice of his claims. Subsequent to the implementation of the Success Plan, Plaintiff

---

[9]     For purposes of the Motion, the Court will presume that these allegations are undisputed and properly supported facts. *See supra* n.1.

received a gift card as recognition for his performance and was praised in an e-mail. (D.I. 1 at ¶¶ 24-25) Shortly thereafter, Plaintiff took a pre-approved two week vacation where he suffered a re-aggravation of a pre-existing back injury. (*Id.* at ¶ 26) Upon return to work, Plaintiff made requests for accommodations for this back injury, including a request to be provided an ergonomic chair and a request for a temporary work schedule adjustment. (*Id.*) However, Plaintiff was never provided an ergonomic chair and, one day after returning to work on a half-day basis, he was fired. (*Id.* at ¶ 31) Plaintiff was allegedly told that he was fired because he "was no longer a model employee," with no mention made of any specific performance issues. (*Id.*) Taking these facts together, they raise a genuine issue as to whether Plaintiff could have reasonably viewed his termination as attributable to his requests for accommodations regarding his back injury—the facts underlying his ADA claim—and not due to a breach of the implied covenant of good faith and fair dealing. *Cf. Brown*, 820 A.2d at 368 ("The limitations period for a toxic tort does not begin immediately upon the onset of physical problems if the symptoms are reasonably attributable to another cause and the plaintiff is not on notice of the tortious cause.").

As to exactly when after his termination Plaintiff did, in fact, become aware of his legal injury (a date that must be on or after February 10, 2009 to withstand summary judgment on statute of limitations grounds), here, there are few facts in the record for the Court to consider. To this end, Plaintiff argues that "[w]hile additional discovery may be necessary to determine the precise date of when [Plaintiff] discovered the Defendant's misrepresentations and bad faith, [he] could not have become aware of these misrepresentations prior to his filing a claim of discrimination with the DDOL on February 10, 2009." (D.I. 10 at 14) Plaintiff argues in his answering brief that this is so because e-mails regarding the covert assessment of Plaintiff were

first disclosed to him during an April 9, 2009 mediation before the DDOL—but he points to no

facts of record to directly support this claim. (*Id.*) The only "fact" Plaintiff does point to in this

regard is the fact (listed in the Complaint) that Plaintiff filed a claim of discrimination with the

DDOL on February 10, 2009. (*Id.* (citing (D.I. 1 at ¶ 7))) The Court is skeptical that this fact

alone would be sufficient to create a genuine issue of material fact as to whether Plaintiff did not

learn of his legal cause of action in Count II until at least February 10, 2009.

Nonetheless, the Court finds that it would be inappropriate to grant summary judgment

for Defendant at this time. Instead, in accordance with Rule 56(e)(1) the Court will recommend

that the Motion for summary judgment as to Count II be denied without prejudice to Defendant's

ability to re-file it at a later time on this ground. Rule 56(e)(1) states that if a party fails to

properly support an assertion of fact, the court may "give an opportunity to properly support . . .

the fact." As the advisory committee notes to this subsection explain:

> [S]ummary judgment cannot be granted by default even . . . when an
> attempted response fails to comply with Rule 56(c) requirements. . . .
> Before deciding on other possible action, subdivision (e)(1) recognizes
> that the court may afford an opportunity to properly support or address the
> fact [that was improperly supported]. In many cases this opportunity will
> be the court's preferred first step.

Fed. R. Civ. P. 56 advisory committee notes, 2010 amendments. Here, the parties' arguments as

to summary judgment regarding Count II were primarily focused on whether the statute of

limitations would be tolled only up through the date of Plaintiff's termination—not as to whether

there were sufficient facts in the record to demonstrate that Plaintiff became aware of his claimed

legal injury on or after February 10, 2009. Under these circumstances, and in light of the

procedural posture of this case, the Court finds it just to allow Plaintiff another opportunity to

31

properly support his factual assertions as to this issue. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532-33 (N.D. Cal 2012) (denying defendant's motion for summary judgment without prejudice to allow plaintiff additional time to conduct discovery on the issue); *cf. Sodexo Operations, LLC v. Columbus Cnty. Bd. of Educ.*, No. 7:11-CV-103-FL, 2013 WL 461808, at *3 (E.D.N.C. Feb. 6, 2013) (denying defendant's motion for summary judgment without prejudice where both parties failed to properly support their factual assertions) (citing cases); *Hitzeman v. Perry Cnty. Reg'l Jail*, Civil Action No. 09-08-GFVT, 2011 WL 619865, at *2-3 (E.D. Ky. Jan. 21, 2011) (denying defendant's motion for summary judgment without prejudice where the defendant did not properly support its initial motion and allowing it an opportunity to do so, as the case was in its early stages).

For the foregoing reasons, the Court recommends that the Defendant's Motion be denied as to Count II.  The denial is recommended to be without prejudice to Defendant's ability to later re-file a summary judgment motion, if it chooses to do so, arguing that there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law, in that Plaintiff could not have discovered his alleged legal injury in Count II on or after February 10, 2009.

IV.   **CONCLUSION**

For the foregoing reasons, I recommend that Defendant's Motion be DENIED. Specifically, I recommend that Defendant's motion as to Count I be denied and that Defendant's motion as to Count II be denied without prejudice as set forth above.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, http://www.ded.uscourts.gov.

Dated: March 27, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE